599 P.2d 976 (1979)
In the Matter of the ESTATE OF Florence A. HAYWOOD, Deceased.
Winfield L. KNIES, Special Administrator of the Estate of the Deceased, and Bonell Retirement Community, Plaintiffs-Appellees,
v.
Kathryn Anna GROSS, as Caveatrix and Petitioner for Specific Performance, Defendant-Appellant.
No. 78-1044.
Colorado Court of Appeals, Div. III.
August 9, 1979.
*977 West & Winters, William L. West, Greeley, for plaintiffs-appellees.
Waldo & Waldo, Ralph E. Waldo, Jr., Greeley, for defendant-appellant.
SMITH, Judge.
This is an action brought against the estate of Florence A. Haywood, deceased, by Kathryn Anna Gross, her sole heir at law, to enforce an agreement made by decedent. From judgment entered for the estate, the heir appeals, and we reverse.
Kathryn Anna Gross, Mrs. Haywood's niece, came to Greeley, Colorado in July of 1965. She and her family lived in decedent's home and cared for decedent until it was decided that decedent would sell her home and would move into a retirement community in June of 1967. The written agreement, which is in question here, was entered into on April 10, 1967, and in it decedent promised to pay her niece the sum of $4,000 and to leave unchanged her will, executed on January 16, 1964, naming niece as sole beneficiary. Decedent further promised not to make any subsequent gifts of money or property to anyone. This agreement was made in consideration of niece's care for decedent during the period commencing in July of 1965.
In 1972, the decedent executed a new will in which, although niece remained a nominal beneficiary, the majority of decedent's property was given to others. Following decedent's death on August 6, 1973, the niece filed a caveat contesting the later will, or in the alternative, requesting specific performance of the 1967 agreement. Subsequently, the niece abandoned her caveat and now seeks only specific performance of the contract. She does not object to the admission of the later will into probate.
The probate court concluded that all the claims of the niece against the decedent as they existed on April 10, 1967, the date of the agreement, were completely satisfied by the express terms of paragraph 3 of the agreement which provides:

*978 "On May 1, 1967, First Party [decedent] agrees to pay to Second Party [niece] the sum of Four Thousand Dollars ($4,000.00). This payment shall be a complete settlement of any claims of either party against the other and, should Second Party or her husband . . . make any claim in the future against the First Party, then First Party's obligation to leave her Will unchanged shall thereby be cancelled."
It would appear that the $4,000 was in fact paid. Other than payment of the $4,000, the trial court concluded, as a matter of law, that granting the niece specific performance of any other terms of the contract would be inappropriate because it felt there was a lack of mutuality and consideration to support these provisions. However, the agreement further provided in paragraphs 4 and 5 as follows:
"4. First Party agrees to leave her Will dated the 16th day of January, 1964, unchanged. By the terms of said Will, First Party has devised and bequeathed unto Second Party all of her property, real and personal, after necessary funeral expenses, any debts, and taxes have been paid.
"5. During her life, First Party shall not make any gifts of money or property to anyone. However, this shall not be construed to mean that First Party cannot sell her home or any other property which she may have for adequate consideration. . .."
Paragraph 5 also provides additional duties to be performed by niece after May 1, 1967.
The niece contends that the court erred in giving effect to paragraph 3 while completely ignoring the meaning and effect of the balance of the agreement. We agree.
The essential meaning of any contract is to be found from an examination of the entire instrument in question and not merely from isolated phrases or clauses contained therein. City of Boulder v. Stoffle, 29 Colo.App. 500, 487 P.2d 601 (1971). Here, reading the agreement as a whole, we conclude that the $4,000 payment provided to niece was not intended by either party to be the exclusive recitation of decedent's duties under the contract, but that it serves only to provide for a partial and immediate monetary compensation for services that the niece had rendered to that date. The only reasonable construction of the clause which provides that if any future claim is made by the niece against the decedent, then the decedent's obligation to leave her will unchanged would be cancelled, is that it was designed to preclude any additional money claim being made during decedent's lifetime.
We are thus led to the conclusion that the $4,000 cash payment was agreed to be the full and complete settlement of monies to be paid by decedent during her lifetime to her niece and that the parties intended any additional compensation due to be satisfied when niece received the decedent's net estate after her demise. Thus, the $4,000 was merely the amount paid contemporaneously with execution of the agreement, and the balance of decedent's obligation to niece remains unsatisfied.
The niece next contends that the court erred in refusing to grant her specific performance based upon lack of mutuality and lack of consideration. Again, we agree.
A contract to make a will, or to refrain from altering a will, like any other contract, must be supported by consideration. And, where the consideration is a promise vis a vis the promisor's will, it may be given in consideration of services to be rendered, or in return for services already rendered by the other party. Ward v. Ward, 94 Colo. 275, 30 P.2d 853 (1934). Here, the niece had performed extensive personal services for decedent for approximately two years, and in such cases, courts will not inquire as to the adequacy of the consideration already received by the promisor. Oles v. Wilson, 57 Colo. 246, 141 P. 489 (1914).
We agree with the estate that the remedy for breach of contract to make a will is usually an action for damages and not for specific performance. Where, however, the consideration given consists of *979 services rendered during the life of the decedentservices of a peculiar nature not easily susceptible of valuationthe court may decree specific performance. Pool v. Harold, 149 Colo. 29, 367 P.2d 592 (1961); and Oles v. Wilson, supra. When personal care and attention or personal services have been fully performed, and the circumstances are such that to deny specific performance would leave the party with an injury that could not be adequately compensated in damages, equity will grant specific performance of the remaining provisions of the contract. Oles v. Wilson, supra.
Here, niece moved to Greeley from Virginia, took care of all the physical and other needs and wants of the decedent, including cooking, bathing, personal hygiene, housework, laundering, and was on 24-hour call to serve the needs of decedent. In addition, she provided the guidance, concern, and love that only her status as decedent's closest living relative could engender. Ascertainment of the value of such services in terms of monetary damages under such circumstances would be extremely difficult, if not impossible.
Contrary to the estate's contention, since an equitable proceeding to redress the breach of contract relating to a will is not in the nature of a demand which would reduce the size of the estate, the claim is essentially one which is cognizable in a court of equity. In a real sense, the action involves a dispute as to the ownership of the decedent's property, and is thus not a claim against her estate. See § 15-10-201(6), C.R.S.1973. Thus, the non-claims statute § 15-12-803, C.R.S.1973, does not determine the time within which the action must be started. See Tarr v. Hicks, 155 Colo. 159, 393 P.2d 557 (1964). See also Risbry v. Swan, 124 Colo. 567, 239 P.2d 600 (1951); and Oles v. Wilson, supra.
Finally, although the trial court made no express findings that the agreement in question here conformed to C.R.S.1963, 153-5-41, which at the time of the agreement defined the statutory requirements and formalities for agreements relating to wills, such findings are implicit in the fact that the court attempted to enforce at least a portion of the agreement.
The judgment is reversed and the cause is remanded for further proceedings consistent with the views expressed herein.
RULAND and STERNBERG, JJ., concur.