Gloria HUIZAR, Plaintiff–Appellee,

v.

ALLSTATE INSURANCE COMPANY, Defendant–Appellant.

No. 98CA2002.

Colorado Court of Appeals, Div. IV.

Nov. 24, 2000.

As Modified on Denial of Rehearing Jan. 18, 2001.

Certiorari Granted Oct. 15, 2001.

Lloyd C. Kordick & Associates, Lloyd C. Kordick, III, Colorado Springs, CO, for Plaintiff–Appellee.

Holland & Hart LLP, Steven C. Choquette, Lusanna J. Ro, Denver, CO, for Defendant–Appellant.

J. Gregory Walta, Colorado Springs, CO, for Amicus Curiae Colorado Trial Lawyers Association.

Opinion by Judge ROTHENBERG.

Defendant, Allstate Insurance Company (Allstate), appeals the trial court's award of attorney fees to the plaintiff, Gloria Huizar, following her successful challenge to Allstate's motion for a trial *de novo* following arbitration. We affirm.

## I.

Huizar was a passenger in an automobile driven by her neighbor. The neighbor lost control of the car, hit a curb, and Huizar suffered injuries. Because the neighbor was uninsured, Huizar sought benefits under the uninsured motorist coverage of her Allstate automobile insurance policy. After the parties were unable to agree on the amount of her benefits, she invoked a provision in the policy that required arbitration.

Following an arbitration hearing, Huizar was awarded $30,000, and Allstate then invoked another provision in the policy granting any party the right to a trial *de novo* if the arbitration award exceeded Colorado's financial responsibility limit of $25,000. *See*

Colo.Sess.Laws 1994, ch. 337, § 42–7–103(2) at 2473; Colo.Sess.Laws 1983, ch. 93, § 10–4–706(1)(a) at 456.

Huizar challenged the validity of the *de novo* clause and, following submissions by the parties, the trial court denied Allstate a trial *de novo*. The court concluded the *de novo* provision in the insurance policy violated public policy and was therefore void. It confirmed the arbitration award and entered judgment for Huizar for the arbitration amount plus interest and costs. Allstate appealed, and the supreme court upheld the trial court's ruling. *See Huizar v. Allstate Insurance Co.*, 952 P.2d 342 (Colo.1998).

On remand, Huizar sought an order from the trial court requiring Allstate to pay the attorney fees expended in defending against Allstate's invocation of the insurance policy's *de novo* provision, and the appeal that followed. By the remand hearing, Huizar showed that she had spent more in attorney fees that she had been awarded in arbitration, and that, unless she was awarded the attorney fees she had incurred during the litigation with Allstate over the validity of the *de novo* clause, she would have suffered a net loss.

The trial court construed the insurance policy as permitting an award of attorney fees and concluded Huizar was entitled to her attorney fees. The court observed that:

> It would be ironic indeed if [Huizar] here, having won this public policy fight to protect insureds from the dilutive effect of the trial *de novo*, herself had her benefits diluted by the very act of undertaking the fight.

Based on the proof adduced at the hearing, the court ordered Allstate to pay Huizar approximately $40,000 for the attorney fees expended as a result of the litigation over the clause. Attorney fees were not requested or awarded for the arbitration hearing itself or any other portion of the proceedings.

## II.

Allstate first contends Huizar waived any right she may have had to attorney fees. We disagree.

Huizar first requested attorney fees in the trial court in a brief opposing Allstate's motion for a trial *de novo*. The trial court ruled on the motion for a trial *de novo*, but did not address the attorney fees issue.

Allstate maintains that Huizar had to request fees in a post-judgment motion or by filing a cross-appeal or petition for certiorari after entry of the original judgment. However, Allstate's argument is premised on the belief that the court's entry of the original judgment necessarily constituted a denial of the request for attorney fees.

Attorney fee issues need not be resolved before entry of judgment on the merits, or even the appeal therefrom. *See Baldwin v. Bright Mortgage Co.*, 757 P.2d 1072 (Colo.1988). And, because the attorney fees issue had already been raised, there was no need for Huizar to raise it again in a post-judgment motion.

Further, there was no ruling adverse to her on this issue, and no basis on which she could have cross-appealed or sought further review on this issue. Hence, we conclude the issue of attorney fees was still pending and properly before the trial court upon remand.

## III.

Allstate next contends the trial court erred in awarding Huizar her attorney fees based on the language in the policy. We reject each of its arguments in turn.

The interpretation of an insurance policy is an issue of law which is reviewed *de novo*. *Colonial Insurance Co. v. American Hardware Mutual Insurance Co.*, 969 P.2d 796 (Colo.App.1998).

Although an insurance policy is a contract and is interpreted using general principles of contract interpretation, *see Chacon v. American Family Mutual Insurance Co.*, 788 P.2d 748 (Colo.1990), the supreme court has recognized there is a disparity of bargaining power between insurers and their insureds, and that insurance policies are closely scrutinized. *See Huizar v. Allstate Insurance, supra*, 952 P.2d at 344 ("Because of both the disparity of bargaining power between insurer and insured and the fact that materially

different coverage cannot be readily obtained elsewhere, automobile insurance policies are generally not the result of bargaining."); *Peterman v. State Farm Mutual Automobile Insurance*, 961 P.2d 487, 494 (Colo.1998) (holding consent to sue clauses void because they violate public policy regarding uninsured motorist coverage, and recognizing there is a "quasi-fiduciary duty that the insurer owes its insured").

■ Under the American Rule—to which Colorado adheres—parties generally bear the responsibility for paying their own legal expenses. However, there is an exception when the parties' contract provides for such fees. *Bernhard v. Farmers Insurance Exchange*, 915 P.2d 1285 (Colo.1996).

The insurance policy here contains separate parts for automobile liability insurance and uninsured motorists insurance. The automobile liability insurance part is designated as Part 1 and appears at pages 2–4 of the policy, whereas the uninsured motorist insurance part is designated as Part 5 and appears at pages 13–15 of the policy.

■ Relying on *Allstate Insurance Co. v. Robins*, 42 Colo.App. 539, 597 P.2d 1052 (1979), the trial court referred to a provision in the liability portion of Allstate's policy requiring that it pay its insured "other reasonable expenses incurred at [the insurer's] request." Although no similar language appears in the uninsured motorist part, the trial court construed Allstate's policy as a whole and concluded that it authorized the award of Huizar's attorney fees under the contract exception.

In *Allstate Insurance Co. v. Robins, supra*, a division of this court interpreted very similar policy language to mean that an insured could recover attorney fees against its insurer where the insurer has brought and lost a declaratory judgment action regarding coverage. The division in *Robins* reasoned that:

> If the insurer can force [the insured] into a declaratory judgment proceeding and, even though it loses in such action, compel [the insured] to bear the expense of such litigation, the insured is actually no better off financially than if [the insured] had never had the [right to a defense].

*Allstate Insurance Co. v. Robins, supra*, 42 Colo.App. at 541, 597 P.2d at 1053. *See* 7A J. Appelman, *Insurance Law & Practice* § 4691 (1962) (setting forth rationale adopted in *Robins* ).

The rule adopted in *Robins* finds considerable support in other decisions. *See Allstate Insurance v. Orban*, 855 P.2d 9, 11 (Colo. App.1992) (citing such decisions and observing that the award of attorney fees in such cases "results only in restoring the insured to the position the insured would have occupied had the carrier properly honored the policy provisions in the first instance"); *Wheeler v. Reese*, 835 P.2d 572 (Colo.App.1992); *Scott's Liquid Gold–Inc. v. Lexington Insurance*, 97 F.Supp.2d 1226 (D.Colo.2000) (awarding attorney fees to insured based on *Robins* ); *Flannery v. Allstate Insurance Co.*, 49 F.Supp.2d 1223 (D.Colo.1999)(same).

### A.

Allstate acknowledges the holding in *Robins*, but claims that it is distinguishable because *Robins* involved a dispute between an insurer and its insured over liability coverage for injuries to third parties, whereas Huizar's case involves a dispute over her own uninsured motorist benefits. We acknowledge this distinction, but are not persuaded that it requires a different result.

■ The purpose of statutes mandating uninsured motorist coverage is to afford a person injured in an accident caused by an uninsured motorist the same benefits that the injured party would have had if injured by an identifiable insured motorist. *See Farmers Insurance Exchange v. Walther*, 902 P.2d 930 (Colo.App.1995); 7 D. Blashfield, *Automobile Law & Practice* § 315.1 (1987).

Uninsured motorist coverage thus substitutes for a liability claim with the insurer functioning as the liability carrier for the uninsured motorist. However, before any payment is made by the injured party's own insurer, the injured party's claim is still litigated and the uninsured motorist's liability must be shown along with causation and damages.

Here, the matter proceeded to arbitration at which time Huizar had to prove that her uninsured neighbor was liable for the accident and that she (Huizar) suffered damages as a result of the accident. In that regard, there was no functional difference between the liability portion of the policy and the uninsured motorist portion.

In fact, the trial court found the justification for awarding attorney fees to Huizar even more powerful than it was in *Robins* because, in Huizar's case, the trial *de novo* provision had been declared void as against public policy, and because "its enforcement would require insureds to expend funds in the trial *de novo*, which expenditures would as a practical matter deprive them of the benefits to which they were contractually entitled."

Nor have all attorney fee award cases involved third party claims. In *Hedgecock v. Stewart Title Guaranty Co.*, 676 P.2d 1208 (Colo.App.1983), plaintiff sued her own title insurance company for breaching its contract by providing her with title that was not marketable, and for failing to cure the defect. Relying on *Robins*, a panel of this court awarded attorney fees to the insured, reasoning that:

> If the insurer can force [the insured] into a declaratory judgment proceeding and, even though it loses in such action, compel [the insured] to bear the expense of such litigation, the insured is actually no better off financially than if he had never had the contract right....

*Hedgecock v. Stewart Title Guaranty Co., supra*, 676 P.2d at 1211.

Here, in ruling that Huizar was entitled to such fees, the trial court also relied on *Huizar v. Allstate Insurance, supra*, 952 P.2d at 348–49, in which the supreme court stated that:

> [W]hen an insurer invokes the trial *de novo* clause, the amount that the insured victim ultimately recovers is necessarily reduced. The insured will incur additional expenses, such as ... attorney fees ... and other costs of presenting a case, not to mention the unquantifiable hardship of prolonging a final resolution of the case....

> [W]e find that by invalidating arbitration which has already been completed, [the trial *de novo* clause] needlessly increases costs, dilutes uninsured motorist coverage ... and renders arbitration a less effective means of dispute resolution.

The trial court concluded that:

> There is no basis to distinguish the facts in *Robins* from the facts here. The language in both policies is virtually identical. In both cases the insurer had a contractual obligation to provide benefits (in *Robins* to defend and indemnify against the claims of a third party; and here to pay uninsured motorist benefits), in both cases the insurers resisted that obligation and lost, in both cases the insureds incurred substantial attorney fees as a direct result of the insurers' efforts to avoid their policy obligations, and in both cases it is necessary to interpret the policy language as allowing for the recovery of those fees, otherwise the insureds in both cases will have lost the substantial benefit of their bargain.

Unlike the trial court, we do perceive a distinction between Huizar's situation and that presented in *Robins* in that in *Robins*, Allstate was attempting to avoid its policy obligations. Here, in contrast, Allstate was attempting to enforce an obligation that was in the contract albeit one later held to be void.

Despite this difference, we nevertheless agree with the trial court that attorney fees were justified under the *Robins* rationale. Huizar's action in challenging the *de novo* clause was the functional equivalent of the declaratory judgment action in *Robins* and without the relief granted by the trial court, the insureds in both cases will have lost the substantial benefit of their bargain.

### B.

Contrary to Allstate's contention, *Bernhard v. Farmers Insurance Exchange, supra*, which was decided after *Robins*, does not require another result.

In *Bernhard*, the issue was whether an action based on a breach of a quasi-fiduciary duty should be analogized to an action based

on the breach of a fiduciary duty and, thus, be treated as an exception to the American Rule. However, the trial court here awarded fees based on the contract exception to the American Rule, not based on the breach of fiduciary duty exception. Thus, *Bernhard* has no application. *See Scott's Liquid Gold–Inc. v. Lexington Insurance, supra.*

### C.

Allstate also maintains that the trial court should not have awarded attorney fees under the contract because the "reasonable expenses" language is located in the liability part of the policy. According to Allstate, such language is limited to third party liability claims and was not intended to apply to the uninsured motorists part of the policy. Under these circumstances, we disagree.

■ In ascertaining the effect of a contract, the writing must be construed as a whole, rather than in detached parts. *Gandy v. Park National Bank*, 200 Colo. 298, 615 P.2d 20 (1980). *See also Napper v. Schmeh*, 773 P.2d 531, 536 (Colo.1989) (citing with approval Restatement (Second) of Contracts § 202 (Rules in Aid of Interpretation)(1981), which states that, "a writing is interpreted as whole...."); *In re Estate of Haywood*, 43 Colo.App. 127, 599 P.2d 976 (1979) (to determine the essential meaning of a contract, one must examine the entire writing and not merely isolated phrases or clauses contained therein).

■ The rule that a writing must be construed as a whole, rather than in detached parts, is especially appropriate in insurance law. D. Blashfield, *supra*, at § 292.1 ("In construing a policy of automobile insurance it is to be read as a whole, all provisions of the policy being construed together to determine the intention of the parties with respect to the subject matter, the risk insured, and other related matters, and *different parts of the policy are to be read together*, especially when one part refers to another." (emphasis added)). *See J & S Enterprises v. Continental Casualty Co.*, 825 P.2d 1020 (Colo.App. 1991).

The judicial policy of construing insurance policies in favor of the insured "has been justified on the ground that it is the insurance company that selects the words used in the policy." 3A J.G. Sutherland, *Statutory Construction* § 70.05 ("In construing an insurance policy, if there are two rational interpretations of the policy language, the insured is entitled to the benefit of the one that is more beneficial to it."). *See* D. Blashfield, *supra*, at § 292.1 ("The object of an automobile insurance policy is to afford an indemnity against loss, and it should be construed in a way which will effectuate this purpose, rather than ... defeat it.")

In support of its argument that the contract language authorizing attorney fees is limited to third party liability claims, Allstate primarily relies on *Farmers Insurance Co. v. Gilbert*, 14 Kan.App.2d 395, 791 P.2d 742 (1990), *aff'd as modified on other grounds*, 247 Kan. 589, 802 P.2d 556 (1990). We are not bound by the Kansas decision, and conclude in any event that the facts in *Gilbert* are inapposite.

*Gilbert*, a motorcyclist, sustained $50,000 in injuries when he was hit by an insured motorist. The driver of the automobile admitted liability and paid Gilbert policy limits of $25,000. Gilbert had three separate insurance policies himself, two automobile policies with limits of $50,000, and one motorcycle policy with a limit of only $25,000.

Gilbert demanded an additional $25,000 in underinsured motorist benefits from his own insurer, but his insurer denied coverage. The primary issue on appeal was whether he could recover $25,000 in underinsured motorist benefits under either of his two automobile insurance policies, as he maintained, or whether his motorcycle policy was the only one that applied and he was not entitled to such benefits, as his insurer maintained.

A panel of the Kansas Court of Appeals held that coverage existed under the unambiguous terms of Gilbert's policies, and rejected the insurer's argument that a motorcycle could not be an insured car under the automobile policies. The panel distinguished liability insurance coverage from uninsured or underinsured insurance coverage, noting that "uninsured motorist insurance will provide coverage in situations where liability

insurance will not." *Farmers Insurance Co. v. Gilbert, supra*, 14 Kan.App.2d at 401, 791 P.2d at 746.

After determining there was underinsured motorist coverage, the panel denied Gilbert's request for attorney fees in a cursory fashion and *without the citation of any authority*. It stated only that:

> Gilbert reasons that, because [insurer] filed this declaratory judgment action, his costs of defending it were incurred at [insurer's] expense. The relied-upon provision is found in the portion of the policy providing liability coverage. No such provision is present in the portion of the policy providing uninsured motorist coverage.

*Farmers Insurance Co. v. Gilbert, supra*, 14 Kan.App.2d at 406–07, 791 P.2d at 749.

In *Gilbert*, arbitration was not involved, there was no *de novo* clause, and when the coverage issue was resolved, Gilbert received from his insurer the sum that he would have received had the driver of the automobile been adequately insured. He had no basis for claiming attorney fees against the underinsured driver of the automobile and, thus, no basis for an award of attorney fees from the insurer. *See Farmers Insurance Exchange v. Walther, supra*.

Huizar's case is not so easily classified. It began as an uninsured motorist claim. Huizar fully complied with the terms of the policy requiring arbitration, received an award, and duly filed to docket her arbitration award pursuant to § 13–22–217, C.R.S., 2000. Allstate then responded by invoking the trial *de novo* clause, which in effect contested its liability to its own insured for the amount of damages awarded.

The attorney fees issue thus arose over the applicability of an arbitration clause-related provision that benefited only the insurer, and the trial court awarded Huizar only the attorney fees that she expended defending against Allstate in that subsequent litigation.

In contrast to *Farmers Insurance Co. v. Gilbert, supra*, and other cases in which attorney fees have been disallowed, the party liable to Huizar—namely, her uninsured neighbor—could not have invoked the *de novo* clause. While Allstate was within its legal rights in doing so and in pressing its appeal to the Colorado Supreme Court, Allstate nevertheless forced Huizar to sustain attorney fees that would not have arisen in litigation with her uninsured neighbor.

For example, in *Thurman v. State Farm*, 942 P.2d 1327 (Colo.App.1997), a panel of this court held the trial court erred in ordering an insurer to pay its insured attorney fees expended by the insured in obtaining a settlement from the underinsured tortfeasor. This is because the insured would have had no right to recover such fees against the uninsured tortfeasor.

Similarly, here, Huizar concedes she has no right to request attorney fees for the initial proceedings including the arbitration because such fees could not have been recovered from the tortfeasor-neighbor. Huizar seeks only the attorney fees arising from the litigation over the *de novo* clause, which the tortfeasor could not have raised. Allstate's litigation at that stage of the proceeding was solely for its own benefit.

If Allstate's position were accepted, the legislative intent in requiring uninsured motorist coverage would not be satisfied because Huizar would not be "compensated at least to the same extent as one injured by a motorist who is insured in compliance with the Motor Vehicle Financial Responsibility Act...." *Alliance Mutual Casualty Co. v. Duerson*, 184 Colo. 117, 122–23, 518 P.2d 1177, 1181 (1974). To the contrary, Allstate's interpretation of the policy would result in an impermissible dilution of that uninsured motorist coverage in violation of public policy. *See Huizar v. Allstate Insurance, supra*.

Allstate's reliance on *J & S Enterprises v. Continental Casualty Co., supra*, is misplaced. There, business owners at a mall suffered losses when the mall was closed because of the release of asbestos, and the owners sought coverage from their insurer. The trial court determined that the policy excluded coverage for such contamination. On appeal, a division of this court agreed, after determining that the two exemption clauses were entirely independent and should not be construed together.

Allstate argues that the same reasoning should be applied here. However, here, we are not being asked to determine the applicability of policy exclusions or to define allegedly ambiguous terms in the policy. Accordingly, *J & S Enterprises v. Continental Casualty Co., supra*, does not support Allstate's position. *See Sims v. Sperry*, 835 P.2d 565, 572 (Colo.App.1992) ("[W]e must interpret words of exclusion strictly against the insurer. . . ."); J.G. Sutherland, *supra* at § 70.05 ("Exclusionary clauses are given stricter construction than coverage clauses in automobile liability policies.")

*International Technical Instruments, Inc. v. Engineering Measurements Co.*, 678 P.2d 558 (Colo.App.1983) is also inapposite because the issue there involved the construction of a specific exclusion in a manufacturing agreement, not the construction of an insurance contract. Defendants claimed the trial court erred in permitting the jury to award lost profits to the plaintiff because, according to defendants, the parties' contract excluded consequential damages.

Further, while the panel rejected defendant's interpretation of the contract and construed the exclusion as limiting damages only for a breach of warranty, it specifically stated that "the meaning and effect of a contract is to be determined from an examination of the entire instrument, not merely from isolated clauses and phrases." *International Technical Instruments, Inc. v. Engineering Measurements Co., supra*, 678 P.2d at 561. Here, unlike *International Technical Instruments*, we are not being asked to determine the applicability of a policy exclusion.

*Aetna Casualty & Surety Co. v. McMichael*, 906 P.2d 92 (Colo.1995), is more instructive in determining the interplay between uninsured motorist coverage and liability coverage. There, the supreme court held that public policy required insurers to provide uninsured and underinsured motorist coverage to a class of individuals coextensive with the class covered by the liability provision in the policy. In its analysis, the court found it necessary to construe the uninsured motorist coverage of an automobile insurance policy in the light of the policy's liability coverage, explaining that:

Consumers unaware of or unschooled in the vagaries of insurance contracts would be misled into believing they have purchased coverage when in reality they have not. Moreover, this interpretation provides protection to individuals from loss caused by negligent, financially irresponsible motorists.

*Aetna Casualty & Surety Co. v. McMichael, supra*, 906 P.2d at 98.

We are also faced with an additional consideration in construing this insurance policy because the Allstate policy contains an express provision in the uninsured motorist portion providing that, when a party has invoked the right to trial *de novo* clause with respect to uninsured motorist benefits through arbitration, "[c]osts, including attorney fees, are to be paid by the party incurring them."

However, in *Huizar v. Allstate Insurance Co., supra*, the supreme court held the *de novo* clause unenforceable. The court's language there was unequivocal, leaving no reason to conclude the court intended that any portion of the trial *de novo* clause survives. Hence, the supreme court's holding in *Huizar* left the insurance policy with only the attorney fee language on which the trial court relied in granting fees to Huizar. To the extent the supreme court's ruling resulted in any ambiguity in the insurance policy, the trial court was also required to resolve it in favor of the insured. *See Chacon v. American Family Mutual Insurance Co., supra*. Reading the policy as a whole and in the light of *Huizar v. Allstate Insurance Co., supra*, we therefore reject Allstate's argument that the "reasonable expenses" language located in the liability part of the policy was strictly limited to third party liability claims. We conclude the trial court did not err in invoking the provision in the policy requiring Allstate to pay its insured, Huizar, "other reasonable expenses incurred at [the insurer's] request," and in awarding her attorney fees under the contract. *See Allstate Insurance Co. v. Robins, supra*.

IV.

Even if we were to agree with Allstate that the contract exception does not

**548**

support the attorney fees award, we conclude the public policy considerations articulated by the supreme court in *Huizar v. Allstate Insurance Co., supra,* and § 10–4–609, C.R.S.2000, should be interpreted to authorize the award of fees under the limited circumstances of this case. *See* § 10–4–609(4), C.R.S. ("Uninsured motorist coverage shall include coverage for damage for bodily injury or death which an insured is legally entitled to collect from the owner or driver of an underinsured motor vehicle.").

As noted, in *Huizar v. Allstate Insurance Co., supra,* the supreme court held unenforceable a clause permitting the insurer to require Huizar to undergo a trial *de novo* following arbitration. The court held the clause invalid in part because its effect was to dilute impermissibly Huizar's uninsured motorist coverage by requiring her needlessly to increase the costs of litigation. It concluded that the process initiated by the insurer was an unjustifiable expansion of the arbitration process that necessarily reduced the amount recovered by the insured.

Here, the trial court sought to award Huizar the needlessly increased costs that were entirely attributable to the extended litigation surrounding Allstate's void *de novo* clause. Unlike the circumstances in *Thurman v. State Farm, supra,* 942 P.2d at 1330, where the insured's recovery was "substantially equivalent to that which [he] would have recovered if the tortfeasor had had liability coverage," the court found that Allstate had forced Huizar to incur attorney fees that would have absorbed all of the uninsured motorist moneys previously awarded to her in arbitration.

Because such a result would have impermissibly diluted her benefits, we conclude that under the limited circumstances of this case, the above-mentioned public policy considerations justified the trial court's award of attorney fees to Huizar.

Order affirmed.

MARQUEZ, J., concurs.

DAILEY, J., specially concurs.

Judge DAILEY, specially concurring:

In Colorado, we adhere to the American Rule, under which each party bears the responsibility for paying its own legal expenses. *Bernhard v. Farmers Insurance Exchange,* 915 P.2d 1285 (Colo.1996).

This rule is subject to exceptions, such as where a contract, statute, or rule provides for an award of attorney fees. *Bernhard v. Farmers Insurance Exchange, supra.*

I join the majority in affirming the award of fees in this case. I write separately, however, because I believe that the award is authorized neither by contract nor by public policy per se, but by statute.

I.

The trial court awarded Huizar attorney fees pursuant to the contract exception to the American Rule. The court based the award on a provision in the insurance policy requiring Allstate to pay Huizar "other reasonable expenses incurred at [Allstate's] request."

A division of this court has held, under very similar language, that the insurer agreed to pay its insured's attorneys fees when the insured successfully defended a declaratory judgment action initiated by the insurer. *See Allstate Insurance Co. v. Robins,* 42 Colo.App. 539, 597 P.2d 1052 (1979).

However, *Robins* and all the cases which have favorably cited it involved disputes between the insurer and the insured over liability coverage for injuries to third parties. The present case does not involve a dispute involving a third party; rather, the dispute is between the insurer and the insured over uninsured motorist benefits for the insured herself.

This distinction is not insignificant. Indeed, the award of attorney fees here is premised upon the insured's contractual right "to have actions against [her] defended by the insurer, at its expense." The duty to defend against others, however, arises only in the liability—not uninsured motorist—context.

An insurance policy should be construed to give effect to the intent of the parties. *Compton v. State Farm Mutual Automobile*

*Insurance Co.,* 870 P.2d 545 (Colo.App.1993). "Courts should not rewrite insurance policy provisions that are clear and unambiguous." *Compass Insurance Co. v. City of Littleton,* 984 P.2d 606, 613 (Colo.1999).

Here, the insurance policy has separate parts for automobile liability insurance and uninsured motorists insurance. The automobile liability insurance part (Part 1) appears at pages 2–4 of the policy. The uninsured motorist insurance part (Part 5) appears at pages 13–15 of the policy. The "reasonable expenses" language appears only in the Liability part of the policy—alongside other provisions setting forth Allstate's obligations in the event that an insured is sued by another person. *See Black's Law Dictionary* 806 (7th ed.1999) (liability insurance is "[a]n agreement to cover a loss resulting from one's liability to a third party.... The insured's claim under the policy arises once the insured's liability to a third party has been asserted."). There is no similar language in the uninsured motorists part of the policy.

Relying on the principle that contracts must be construed as a whole, Huizar argues that the liability section's attorney fee provision applies as well to the uninsured motorist section of the policy.

In *International Technical Instruments, Inc. v. Engineering Measurements Co.,* 678 P.2d 558, 561 (Colo.App.1983), a division of this court recognized that the "meaning and effect of a contract is to be determined from an examination of the entire instrument, not merely from isolated clauses or phrases." Yet, the court, noting that the clause in question appeared under a particular heading and nowhere else in the contract, limited the applicability of the clause to that particular heading.

Likewise, in *J & S Enterprises, Inc. v. Continental Casualty Co.,* 825 P.2d 1020, 1023 (Colo.App.1991), the panel concluded that, because "the format of the [insurance] policy clearly segregated the different coverages into different sections of the contract," an exclusion clause in one part of the contract could not be applied to an exclusion clause in an entirely different part of the contract.

Similarly here, the placement of the "reasonable expenses" language only in the liability part of the policy leads to the conclusion that this language was not intended by the parties to apply to the uninsured motorists part of the policy. *See Farmers Insurance Co. v. Gilbert,* 14 Kan.App.2d 395, 407, 791 P.2d 742, 749 ("The relied-upon provision is found in the portion of the policy providing liability coverage. No such provision is present in the portion of the policy providing uninsured motorist coverage."), *aff'd as modified on other grounds,* 247 Kan. 589, 802 P.2d 556 (1990). *Cf. Mason v. People,* 932 P.2d 1377 (Colo.1997) (had the General Assembly intended statute to achieve a certain result, it would have employed terminology clearly expressing that intent, as it had done in other circumstances).

Moreover, there exists in the uninsured motorists part of the policy a provision expressly refuting the right to claim fees under that part of policy. That provision states that when, as here, a party invokes the right to trial *de novo* with respect to uninsured motorist benefits: "Costs, including attorney fees, are to be paid by the party incurring them."

Although the supreme court, in *Huizar v. Allstate Insurance Co.,* 952 P.2d 342 (Colo. 1998), held the trial *de novo* clause itself unenforceable, its decision could not nullify the quoted language as an explicit and authoritative expression of the parties' intent with respect to attorneys fees.

In my view, Huizar's contract analysis erroneously ignores the structure of the policy, reads language from Part 1 (and page 2) of the policy into Part 5 (and page 15) of the policy, and ignores language in Part 5 expressly precluding an award of fees in this situation. And, adoption of this analysis essentially creates an insurance exception to the American Rule.

There may, or may not, be good reason for adopting such an exception. *Compare Olympic Steamship Co. v. Centennial Insurance Co.,* 117 Wash.2d 37, 811 P.2d 673, 682 (1991) (recognizing insurance exception) *with Collier v. MD–Individual Practice Ass'n,* 327 Md. 1, 607 A.2d 537, 544 (1992) (refusing to adopt insurance exception).

However, Colorado has numerous statutes providing for awards of attorney fees, *see, e.g., Ramos v. Lamm,* 539 F.Supp. 730, 757–59 (D.Colo.1982), *aff'd in part, rev'd in part,* 713 F.2d 546 (10th Cir.1983) (in Appendix B, listing 85 Colorado statutory attorney fees provisions), and the supreme court has indicated that if we are to have another exception to the American Rule, the General Assembly should create it. *See Bernhard v. Farmers Insurance Exchange, supra* (creating new exceptions to the American rule is a function better addressed by the legislature than the judiciary).

## II.

Nonetheless, I believe that attorney fees were properly awarded in this case pursuant to § 10–4–609, C.R.S.2000.

Section 10–4–609 does not expressly authorize an award of fees. However, in *Huizar v. Allstate Insurance Co., supra,* the supreme court held unenforceable a trial *de novo* clause, in part because the effect of the clause was dilute impermissibly Huizar's uninsured motorist coverage under § 10–4–609 by requiring her needlessly to increase her costs of litigation.

The present action seeks to recover those very same needlessly increased costs.

I realize that in the related underinsured motorist context, a division of this court has upheld a denial of an insured's attorney fees incurred in arbitrating a claim with the insurer. *See Thurman v. State Farm Mutual Automobile Insurance Co.,* 942 P.2d 1327 (Colo.App.1997). However, in that case, there was nothing illegitimate about requiring the insured to undergo arbitration, and the fees incurred in arbitration did not substantially diminish the amount of money ultimately awarded to the insured.

Here, the process the insurer required Huizar to undertake or to challenge was not legitimate, and the fees Huizar was forced to incur absorbed all of the uninsured motorist moneys awarded to her. Because of the public policy the supreme court associated with § 10–4–609 in *Huizar v. Insurance Co., supra,* I would interpret § 10–4–609 to au-thorize the award of fees under the unique circumstances of this case.

In sum, I conclude that the contract exception to the American Rule does not warrant an award of attorney fees in this case. Because, however, I also conclude that § 10–4–609 authorizes the award of fees, I concur with the majority in affirming the trial court's order.